UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ITRICH,

                Plaintiff,                Civil Action No. 17-12495
                                                  Honorable Robert H. Cleland
v.                                      Magistrate Judge David R. Grand

DONALD RICUMSTRICT,
THOMAS, ENDERS,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART AS MOOT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [17], AND TO DISMISS THE CLAIMS AT ISSUE IN DEFENDANTS' MOTION**

Before the Court is a Motion for Summary Judgment filed by Defendants Donald Ricumstrict, Thomas, and Enders (collectively "Defendants") on December 1, 2017. (Doc. #17). An Order of Reference was entered on September 7, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #11). Plaintiff David Galeski[1] filed a response, and Defendants filed a reply. (Docs. #21, #22). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Partial Summary Judgment **(Doc. #17)** be **GRANTED** as to Galeski's claims that Enders failed to protect him from an assault that occurred on February 27, 2017, and that Defendants failed to

---

[1] David Itrich, the plaintiff in this suit, legally changed his name to David Galeski Jr. after commencing this suit, and provided the Court with proof. (Doc. #19). Therefore, although the case is still captioned *Itrich v. Ricumstrict et al.*, the Court will refer to the plaintiff as "Galeski."

provide him with information regarding his residential treatment program, but **DENIED AS MOOT** as to Galeski's claim that he was forced to share a cell and a transportation van with a prisoner who had assaulted him a few days earlier. **IT IS FURTHER RECOMMENDED**, however, that this latter claim be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

## II.     REPORT

### A.     Factual Background

This is a civil rights action brought *in forma pauperis* by *pro se* plaintiff, David Galeski pursuant to 42 U.S.C. §1983, alleging violations of his Eighth Amendment rights. (Doc. #1). Galeski is an inmate of the Michigan Department of Corrections ("MDOC") who is currently confined at the Bellamy Creek Correctional Facility ("IBC") in Ionia, Michigan. At the time of the events in question, however, Galeski was housed at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan, having been transferred there to complete a "treatment program."[2] The named defendants are officers and employees of the MDOC who worked at ARF during the time in question; Ricumstrict was the prison's Deputy Warden, Thomas was a residential unit manager (RUM), and Enders was a prison counselor for "Unit 5" in which Galeski was housed.

Galeski arrived at ARF in June 2016, and moved to "Unit 5" cell #120, which he alleges is under the Defendants' supervision. This cell was directly across a hallway from cells 101 and 103, which were occupied by "prisoner Beasley" ("Beasley") and "prisoner Knight" ("Knight"), respectively. Galeski alleges that he is open about being gay, and that on February 5, 2017, Knight started yelling at him and making derogatory and threatening remarks about his sexuality.

---

[2] Galeski alleges that ARF's "residential treatment program houses mentally ill inmates who can be extremely violent."

Knight also said that Galeski's sexual orientation "disrespected" Knight's Muslim religion. Beasley then joined in making the remarks.

Galeski alleges that Beasley and Knight "[operate] like a gang in prison," and that on February 7, 2017, Knight told Galeski he "put a hit out on" him. Galeski alleges he "turned in multiple kites (notes) to unit officers requesting protection from [] Knight but each request was ignored, denied and never responded to." Galeski alleges that he placed a kite in defendant Enders' "kite box" on the night of February 7.[3] The next morning, Galeski was placed on "in-cell" status, meaning he could not leave his cell. He inquired as to the reason for this restriction but never received an answer. Galeski alleges that on February 9, 2017, he was interviewed by defendants Ricumstrict and Thomas about the reasons for his "protection request." Galeski provided "all of the facts and prisoners involved in the harrassment [sic] and threats to his safety," and that he "had numerous similar problems in the past resulting in long-term protection." Galeski alleges that Ricumstrict and Thomas told him to "ignore" Beasley and Knight because "the situation isn't that seriouse [sic]" and "no one would risk going to level five over this." Thirty minutes later, Galeski's in-cell status was terminated, and Ricumstrict and Thomas completed a Request for Protection/Investigation Report which indicates that Galeski "stated that it was a misunderstanding and he is OK now. [Galeski] agreed that he can still be housed in 5 Block." Galeski disputes having so advised Ricumstrict and Thomas.

Galeski alleges that Beasley and Knight threatened him for "snitching" on them, saying that he would pay for it "when [the] heat died down." On February 27, 2017, Knight assaulted Galeski, striking him in the head "multiple times." Galeski received medical care and was returned to his cell, while Knight received a ticket, was placed on "non-bond status" and was

---

[3] Galeski did this because Enders allegedly "had the supivisory [sic] power to request a move for [Galeski] to another cell or unit before and after the protection interview but decided not to."

3

moved to a different cell within the same unit. Beasley then told Galeski that the assault by Knight was "not the end."

On March 1, 2017, Galeski filed grievance ARF-17-03-0538-3B (the "March 1 Grievance") against Ricumstrict and Thomas. (Doc. #17-2 at 37). In that Grievance, Galeski asserted that after he asked Ricumstrict and Thomas for protection from Knight, they told him "to ignore the situation," and "lied on my protection request reporting that I said it was a 'misunderstanding' . . ." (*Id.*). He blamed Ricumstrict and Thomas for keeping him "in a hostile situation" that enabled the February 27, 2017 assault by Knight to occur. (*Id.*).

Galeski remained in the same cell, and on March 4, 2017, Beasley allegedly struck him in the face multiple times in the dining hall. The assault caused a "deep laceration" on Galeski's face that required stitches, and caused him "blurred vision, dizziness, and severe swelling." Beasley was placed on "non-bond status" and Galeski was moved to a different cell within Unit 5 and placed on "in-cell" status for three days.

On March 7, 2017, Galeski was told that he was being transferred to another facility – back to IBC, it turns out.[4] He alleges that he was "escorted to the transport area and placed in a locked cage with his assailant Beasley who was being transferred that morning for a dental appointment." Galeski and Beasley were both then placed in the same transport van. While Galeski states that this gave Beasley the "opportunity to assault and harrass [sic] [him] further," and that Beasley did in fact "degrade[] and harrass[] [sic]" him, he does not allege that any sort of physical altercation took place at this time.

Galeski subsequently filed two additional grievances. The first, Grievance ARF-17-03-0678-3B, which Galeski filed on March 9, 2017 (the "March 9 Grievance"), grieved what

---

[4] Galeski claims that prior to his arrival at ARF, he had been in IBC's "long term protection unit." He claims that when he left ARF on March 7, 2017, he was returned to this unit.

4

Galeski perceived as inaction or improper action by all three Defendants which resulted in the March 4, 2017 assault by Beasley. (Doc. #17-2 at 30) (listing March 4, 2017 as the "Date of Incident" and asserting, "Due to the continued failure to protect [him] . . . [he] was assaulted again on 3-4-17 by prisoner Beasley . . ."). On April 28, 2017, Galeski filed the second grievance, Grievance ARF-17-05-1080-3B (the "April 28 Grievance"). (Doc. #17-2 at 25). In that Grievance, Galeski essentially challenged the fact that he was placed in the same transport cage and van as Beasley, claiming that all officers involved in placing him in that situation "should of [sic] been on alert due to the events and assault leading up to [the March 7, 2017 assault by Beasley]." (*Id.*). Again, though, Galeski does not contend that Beasley assaulted him in the cell or van. (*Id.*).

Galeski appealed the March 1, March 9, and April 28 Grievances through all three steps of the Michigan Department of Corrections ("MDOC") grievance process, and that all three were ultimately denied. (Doc. #17-2 at 4). Thereafter, on August 1, 2017, Galeski filed his complaint in this case alleging a single count of "cruel and unusual punishment" in violation of the Eighth Amendment to the United States Constitution related to the above allegations. (Doc. #1). On December 1, 2017, Defendants filed a motion for partial summary judgment. (Doc. #17). In their motion, Defendants reason that Galeski is actually asserting multiple Eighth Amendment claims against the Defendants, and that they are entitled to summary judgment on certain of those claims due to Galeski's failure to properly exhaust them, as follows:

5

| Galeski's Claim | Defendants' Position |
|---|---|
| All three Defendants failed to protect him from Knight's February 27, 2017 assault | Defendants do not contest that Galeski exhausted this claim as to Ricumstrict and Thomas, but argue that Galeski did not properly exhaust this claim as to Enders |
| All three Defendants failed to move him to a different cell after Knight's February 27, 2017 assault, which enabled Beasley to assault him on March 4, 2017 | Defendants do not contest that Galeski exhausted this claim as to all three Defendants |
| All three Defendants placed him in the transport cage and van with Beasley on March 7, 2017 | Defendants argue that Galeski did not properly exhaust this claim as to any of them |
| Defendant Enders failed to provide him with information about the residential treatment program. | Defendants argue that Galeski did not properly exhaust this claim as to any of them[5] |

(Doc. #17 at 17-18).

### B. Standard of Review

#### i. Summary Judgment

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party, and a fact is "material" if it has the potential to affect the outcome of the suit.

---

[5] Galeski agrees that he failed to exhaust his administrative remedies with respect to this claim. (Doc. #21 at 2). In his response, Galeski states that because he concurs with Defendants as to this issue, he "filed an Amended Complaint on December 8, 2017 striking this claim from the record." (*Id.* at 5; Doc. #20). In their reply, Defendants argue that "[t]his Court need not grant leave to file an amended complaint, but should, rather, grant summary judgment in Defendants' favor with respect to this claim and dismiss it." (Doc. #22 at 2). Where the parties agree that this claim of Galeski's does not belong in this case for the reasons stated in Defendant's summary judgment motion, there is no need to bring into the mix a later-filed amended complaint that merely drops that claim. (*Compare* Doc. #1 *with* Doc. #20). Accordingly, summary judgment in Defendants' favor is appropriate on this issue, and the Court will issue a separate order striking without prejudice Galeski's Amended Complaint, which he filed only to remove this claim. (Doc. #24).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Viewing the evidence in a light most favorable to the nonmoving party, the Court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  (*Id.* at 251-52).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  Once this occurs, the nonmoving party must counter with specific facts upon which a reasonable jury could find in its favor.  *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (citing *Anderson*, 477 U.S. at 252).  A mere scintilla of proof or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.  *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015).

### ii. Pleading Requirements and Summary Dismissal under 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915(e)

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they

must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (internal quotations omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The Court must liberally construe complaints filed by *pro se* litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972; *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Such litigants must nevertheless satisfy the basic pleading requirements that apply in all federal cases, and the leniency granted to them is not boundless. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The plaintiff must plead sufficient facts to show that each individual defendant committed a redressable legal wrong. *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court shall *sua sponte* dismiss an *in forma pauperis* complaint "at any time" if it determines that the action is frivolous

or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(1). *See also*, 28 U.S.C. § 1915(e)(2)(B) (imposing same requirements for complaints filed *in forma pauperis*).

### B. ANALYSIS

In their motion, Defendants argue that dismissal is warranted as to the claims identified above because Galeski failed to properly exhaust his administrative remedies, as required by the PLRA, 42 U.S.C. §1997e(a). (Doc. #17 at 13-19). Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (Doc. #17-3). A state prisoner must first complete the process outlined in the Policy – including pursuing a

grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶P, V). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶FF). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶B).

As noted above, Defendants concede that Galeski exhausted his administrative remedies against Thomas and Ricumstrict relating to the alleged February 27, 2017 assault by Knight. (Doc. #17 at 17). They also concede that Galeski exhausted his administrative remedies against all three Defendants for not moving him to a different cell prior to the alleged March 4, 2017 assault by Beasley. (*Id*.). They argue, however, that Galeski failed to properly exhaust: (1) his claim against Enders for failing to protect him from the February 27, 2017 assault by Knight; and (2) his claim against all three Defendants related to his being placed in a transport cage and van with Beasley on March 7, 2017. For the reasons discussed below, the Court agrees with Defendants as to the first issue, and need not decide the second one because that claim is subject to dismissal on other grounds.

### 1. Galeski Did Not Exhaust a Claim Against Defendant Enders with Respect to the February 27, 2017 Assault by Knight

The parties agree that Galeski's claim that Defendants failed to protect him from Knight's February 27, 2017 assault could only have been exhausted through the March 1 and

10

March 9 Grievances. Ricumstrict and Thomas do not contest that Galeski exhausted such a claim against them because his March 1 Grievance mentions them by name and clearly alleges that they failed to protect him from the February 27, 2017 assault by Knight. (Doc. #17-2 at 37). Defendants argue, however, that the factual content of these Grievances does not cover this particular claim against Enders. (Doc. #17 at 18). The Court agrees.

The parties do not dispute that because the March 1 Grievance does not name Enders, it cannot be the basis for finding that Galeski exhausted a claim against him. *See e.g. Bird v. Mansfield*, No. 2:12-CV-238, 2013 WL 4782369, at *3 (W.D. Mich. Sept. 5, 2013) (recommending that summary judgment be entered in favor of a prison official who was not named at step I of the grievance process); Doc. #17-3, Policy at ¶ R (requiring prisoners to name "all those involved" in the issue being grieved). In the March 9 Grievance, however, Galeski named all three Defendants. With respect to Galeski's claim related to the assault by Knight on February 27, 2017, the problem is that this March 9 Grievance complained about the fact that **after** Knight's assault, the Defendants did not take proper steps to ensure that Galeski was not assaulted again – which he allegedly was, by Beasley on March 4, 2017. (Doc. #17-2 at 30). In the Grievance's "Date of Incident" box, Galeski wrote "3-4-17," and went on to state the following about the subject matter of this Grievance:

> **After writing [the March 1 Grievance]** against RUM Thomas and Deputy Warden Ricumstrict for lieing [sic] in my [protection] request and putting my safety in jepordy [sic], I was still not removed from the area of the known source of threat and assaulter prisoner [Knight] even though I warned P.C. Enders, RUM Thomas, and Deputy Warden Ricumstrict of the possible "hit" out against me in 5 block. **Due to this continued failure** to protect me from known threats and further assaults **I was assaulted again on 3-4-17 by prisoner [Beasley]** who caused me serious physical injury and emotional/psychological injuries.

(Doc. #17-2 at 30) (emphasis added). The highlighted language makes clear that this March 9

11

Grievance grieved the Defendants' alleged failure to protect Galeski *after* the February 27, 2017 assault by Knight and *after* Galeski filed the March 1 Grievance, and that those failures enabled the March 4, 2017 assault by Beasley to occur.[6] While Defendants do not contest that this Grievance exhausted Galeski's claim against all three of them with respect to *the March 4, 2017 assault*, because the Grievance was expressly directed at Defendants' failure to prevent such *future assaults*, they are correct that it did not exhaust Galeski's claim related to the earlier February 27, 2017 assault by Knight. *See* Policy, ¶ R (requiring prisoner to include in his grievance the facts about "the issue being grieved"); *McDonald v. Briggs*, No. 08-cv-11731, 2010 WL 727583, at * 10 (E.D. Mich. Feb. 24, 2010) (prisoner's grievance must complain about the subject matter of the particular claim being asserted); *Garrison v. Walters*, 18 Fed. App'x 329, 331 (6th Cir. 2001) (same).

For all of these reasons, Enders is entitled to summary judgment on Galeski's claim related to Knight's February 27, 2017 assault.

### 2. Even if Galeski Exhausted his Claim Regarding Having to Share a Transport Cage and Van with Beasley, that Claim is Subject to Dismissal under 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B)

Galeski's April 28 Grievance grieved the fact that on March 7, 2017, just three days after Beasley had assaulted him, the two were placed in a transport cage, and then van, together, as Galeski was being transferred back to IBC. (Doc. #17-2 at 25). Galeski claimed in the Grievance that this meant that Beasley "was not restricted from assaulting me further and I was not prevented from more emotional and degrading treatment by [Beasley]." (*Id.*). Galeski contended that "[a]ll officers and officials should of [sic] been on alert to the events and assault

---

[6] Galeski's Step II and Step III appeals confirm the Court's interpretation of the March 9 Grievance. For instance, at Step II, Galeski explained that he grieved the fact that he was housed "around the source of threat and my assaulter [*i.e.*, Knight] which caused a 2nd assault [i.e., the March 4, 2017 assault by Beasley]." (Doc. #17-2 at 28). Again, this shows Galeski was complaining about a failure to protect him **after** the Knight assault.

leading up to 3-7-17 . . . [Placing them in such close quarters] constitutes at a minimum a gross negligence to my safety by all officials and c/o's who should of [sic] been aware of the safety I needed from [Beasley]." (*Id.*). Galeski further wrote, "[t]his grievance targets all prison officials coordinating [his March 7, 2017 transfer] (i[.]e. Warden, Dep Wardens, Inspector, Transfer Coordinator and all C/O's conducting the transfer)." (*Id.*). Defendants argue that because Galeski failed to name anyone in particular as responsible for the decision to place him and Beasley together, this Grievance was not properly exhausted. (Doc. #17 at 13).

This aspect of Defendants' motion should be denied as moot. While Galeski's allegations of being placed in the transport cage and van with Beasley are troubling, even if the Court were to find that Galeski exhausted the April 28 Grievance it would nevertheless recommend dismissing this claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim because Galeski does not allege he suffered a physical injury as a result of the wrongful conduct.

42 U.S.C. § 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

To sustain an Eighth Amendment claim, the injury alleged need not be particularly serious; but, it must be more than *de minimis*. *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011). The Sixth Circuit has made clear that Eighth Amendment claims that are based on mental or emotional injury are precluded by § 1997e(e) absent a showing of physical injury. For instance, in *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008), the Sixth Circuit wrote, "Even if we read his complaint to allege emotional or mental injuries, [the prisoner] cannot bring an Eighth Amendment claim for such injuries because he did not allege a physical injury."

13

(citing 42 U.S.C. § 1997e(e) and *Merchant v. Hawk-Sawyer*, 37 Fed.Appx. 143, 145-46 (6th Cir. May 7, 2002) (per curiam) (denying an inmate's Eighth Amendment claim because the inmate did "not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury") (internal quotation marks omitted).).

Here, although Galeski alleges that while in the transport cage and van, Beasley had the "opportunity" to assault him, Galeski does not allege that Beasley physically contacted him at all, let alone caused him to suffer a physical injury. (Doc. #1 at 12-13). At most, Galeski alleges that Beasley "degraded and harrassed [sic]" him by making comments about the prior assault. (*Id.*).[7] Courts within the Sixth Circuit have held that such allegations are insufficient to state an Eighth Amendment failure to protect claim. *See e.g., Wallace v. Holloway*, No. 16-2390-STA-egb, 2017 WL 4001569, at *7 (W.D. Tenn. Sept. 11, 2017) (dismissing failure to protect claim where prisoner failed to allege that such failure resulted in a physical injury); *Dickey v. Rapier*, No. 16-cv-P712-TBR, 2017 WL 1424803, at *5 (W.D. Ky. Apr. 20, 2017) ("Because Plaintiff alleges no injury [as a result of defendant's failure to protect him], he fails to state a claim upon which relief may be granted.") (citing *Wells v. Jefferson Cty. Sheriff Dep't*, 159 F. Supp. 2d 1002, 1010 (S.D. Ohio 2001) (same)).

In short, because Galeski alleges no physical injury as a result of being placed in the transport cage or van with Beasley, this aspect of his complaint fails to state an Eighth Amendment claim, and should be dismissed pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §

---

[7] Nowhere in Galeski's Grievance paperwork does he make any reference to physical contact between him and Beasley during the time in question. (Doc. #17-3 at 23-25). To the contrary, he makes clear no such physical altercation occurred, and that Beasley merely verbally "degraded" him. (*Id.*).

1915(e)(2)(B).

### III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant's Motion for Partial Summary Judgment **(Doc. #17)** be **GRANTED** as to Galeski's claims that (1) Enders failed to protect him from an assault that occurred on February 27, 2017, and (2) Defendants failed to provide him with information regarding his residential treatment program (and that those specific claims be **DISMISSED**), but **DENIED AS MOOT** as to Galeski's claim that he was forced to share a cell and a transportation van with Beasley on March 7, 2017.  **IT IS FURTHER RECOMMENDED**, however, that this latter claim be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

Dated: April 2, 2018                                         s/ David R. Grand
                                                                           DAVID R. GRAND
                                                                           United States Magistrate Judge

### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.    *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 2, 2018.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager