**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

DAVID ITRICH,

         Plaintiff,

                                       Case No. 17-12495

v.

DONALD RICUMSTRICT,
ARTHUR E. THOMAS, and
RICHARD ENDERS,

         Defendants.
_____/

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS,
(2) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
AND (3) GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

This is a Prisoner Litigation Reform Act ("PLRA") case in which Plaintiff David

Itrich[1] alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

Plaintiff claims Defendants failed to provide reasonable measures to guarantee his

safety.  Before the court is Defendants' Motion for Partial Summary Judgment in which

they argue that Plaintiff has failed to exhaust his administrative remedies for some of his

claims as required by the PLRA. (Dkt. # 17.) Plaintiff has responded (Dkt. # 21) and

Defendants have replied. (Dkt. # 22.) Magistrate Judge David Grand issued a Report

and Recommendation ("R&R") recommending that the court to grant Defendants'

Motion for Partial Summary Judgment and to dismiss one of Plaintiff's claims. (Dkt. #

23.) Plaintiff filed two objections to the R&R (Dkt. # 26) and Defendants have

_____

[1] Plaintiff David Itrich changed his legal name to David Galeski Jr. after commencing
this suit. (Dkt. # 19).

responded. (Dkt. # 28.) After considering the entire record, this court will overrule Plaintiff's objections, adopt the Magistrate Judge's R&R, and grant Defendants' Motion for Partial Summary Judgment.

## I. BACKGROUND

Plaintiff is a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"). In 2015, Plaintiff was housed in long term protective custody at Bellamy Creek Correctional Facility ("IBC") in Ionia, Michigan because of a request for protection concerning events unrelated to this action. In 2016, Plaintiff was transferred to Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan in order to complete a mental health residential treatment program ("RTP"). Plaintiff has since been transferred back to protective custody at IBC, but he was located at ARF in general population during the course of the events relevant to this action. (Dkt. # 1, Pg. ID 3.)

### A. MDOC Policy

The PLRA requires prisoners to pursue the internal dispute resolution measures (known as "administrative remedies") available to them within their respective prisons prior to filing a legal claim. Plaintiff was required to pursue the MDOC's internal dispute resolution measures prior to filing a legal claim because he was housed in a Michigan prison during the course of the events relevant to this action.

The MDOC prison policy has a multistep procedure through which prisoners can report disputes, issues, or concerns. Initially, prisoners can report issues through an unofficial process with no formal paperwork. In colloquial prison terms the process of giving a note to a prison official for a general issue, such as a protection request, is called "placing a kite". (Dkt. # 1, Pg. ID 8.) Prisoners do not have to name any particular

persons or events when placing a kite for a general issue. However, when a prisoner places a kite to report an issue regarding a specific person or event, the kite is called a Specific Problem Offender Notice ("SPON").

MDOC Policy Directive 03.03.110 explains that SPONs are initiated for known or potential conflicts between prisoners, volunteers, and/or prison employees. (Dkt. # 1, Pg. ID 38.) When a SPON is initiated, an investigation is conducted by prison staff. If the SPON is determined to be legitimate after investigation, the SPON is sent to the Warden, Deputy Warden, or Field Operations Administration ("FOA") Regional Administrator for approval and issuance. (*Id.* at Pg. ID 39.) If the prison official determines that a SPON between two prisoners is legitimate, the prisoner who initiated the SPON cannot be housed in the same facility as the prisoner listed on the SPON. (*Id.*) A prisoner can request a review of his SPON. (*Id.*) When an issued SPON may no longer be necessary, an investigation is conducted to determine if the SPON should be removed. (*Id.*) Either the Warden or FOA Regional Administrator files a memorandum indicating where the SPON was issued, the date it was effective, the date and reason it was removed, and the location where it was removed. (Dkt. # 1, Pg. ID 40.) This memorandum is filed sixty days after the SPON's effective date. (*Id.*)

Placing a kite for a general issue and placing a kite to issue a SPON are two of the initial ways a prisoner can show he has attempted to resolve a problem before filing a grievance through the MDOC Policy. MDOC Policy Directive 03.02.130 explains that a prisoner may file a grievance against a staff member to seek "redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." (Dkt. # 17-3.) According to the Directive, all grievances must concisely state the issues, provide

3

the relevant facts, and include the names of all those involved in the issue being grieved. (*Id.* at Pg. ID 152.)

Before filing a grievance, the prisoner must attempt to resolve the issue with the staff member involved in the incident within two days of its occurrence. (*Id.* at Pg. ID 151.) If the issue is not resolved, the prisoner must complete the Step 1 Grievance within five days after attempting to resolve the issue. (*Id.*) The prisoner must describe the incident on the Step 1 Grievance form provided by MDOC.

Upon its filing, a grievance is sent to the Step 1 Grievance Respondent[2] designated for the facility, field office, or the office that houses the staff member who is the subject of the grievance. (Dkt. # 17-3.) The Grievance Respondent reviews the grievance and determines whether to accept or reject it. If the respondent rejects the grievance, the respondent signs it and returns it to the prisoner with an explanation. (*Id.*) The respondent must return a response to the prisoner within fifteen days. (*Id.* at Pg. ID 152.) If a staff member has not responded to a grievance within the required time frame, the prisoner may forward the grievance to the next step of the grievance process within ten days of the expiration of the response deadline. (*Id.*)

Throughout the entirety of the grievance process the respondent maintains a record of grievances received and whether each grievance was accepted or rejected, and if rejected, the reason for rejection. (*Id.*) An interview between the respondent and the prisoner is conducted to allow the prisoner an opportunity to explain the grievance more thoroughly. (*Id.* at Pg. ID 153.) The Step 1 Grievance Respondent is responsible

---

[2] Respondent is a staff member who is designated to investigate and respond to a grievance.

for ensuring that a comprehensive investigation is completed for each Step 1 Grievance accepted, that the appropriate supervisor reviews his response to the grievance, and a copy of the response is provided to the prisoner by the due date. (*Id.*)

A prisoner whose grievance is rejected may appeal the rejection to the Step 2 Grievance process if he is dissatisfied with the Step 1 response or if he did not receive a timely response to his Step 1 Grievance, but a prisoner cannot file a new grievance regarding a Step 1 Grievance rejection. (Dkt. # 17-3, Pg. ID 153.) A Step 2 Grievance may be filed within ten days of either event. (*Id.*) Similar to Step 1, a Grievance Respondent determines whether the Step 2 Grievance should be accepted or rejected and if the respondent rejects it, he provides a signed explanation to the prisoner within fifteen days after receiving the grievance. (*Id.*) The Grievance Respondent ensures that additional investigation is conducted as needed for Step 2. (*Id.*)

A prisoner may appeal to the Step 3 Grievance process if he is dissatisfied with the Step 2 response or does not receive a timely response to his Step 2 Grievance. (Dkt. # 17-3, Pg. ID 154.) A Step 3 Grievance must be filed within ten days of either event. (*Id.*) Step 3 Grievances are processed by the Grievance and Appeals Section of the Office of Legal Affairs in Operations Support Administration. (*Id.*) Each grievance received at Step 3, including those that are ultimately rejected, are logged by the subject matter of the grievance and for rejected grievances, the basis for rejection. (*Id.*)

### B. Plaintiff's Grievances

Plaintiff's cell in ARF was directly across from cells occupied by prisoners Knight and Beasley[3]. Plaintiff is homosexual and alleges that Knight and Beasley are hostile

---

[3] The first names of prisoners Knight and Beasley are not in the record.

toward homosexuality because of their Islamic beliefs. On February 5, 2017, both Knight and Beasley made derogatory and threatening comments about Plaintiff's sexuality and about "[h]omosexuals being an abomination" who "deserve[] to die." (Dkt. # 1, Pg. ID 8.) On February 7, 2017, Knight told Plaintiff he "put a hit out" on Plaintiff. (*Id.*)

Plaintiff alleges he placed multiple kites to unit officers requesting protection from Knight; however, these requests were ignored, denied, or did not receive a response. Plaintiff placed a kite to Defendant Richard Enders, the prison counselor for Unit 5 where Plaintiff was housed, requesting protection. Plaintiff asked Defendant Enders to move Plaintiff to another cell or unit. On February 8, 2017, Plaintiff was placed on "in-cell" status meaning he could not leave his cell. Plaintiff inquired, but never received an answer, as to the reason for his "in-cell" status.

On February 9, 2017, Defendant Donald Ricumstrict, Deputy Warden at ARF, and Defendant Arthur Thomas, residential unit manager ("RUM") at ARF interviewed Plaintiff regarding his protection request. Plaintiff provided information about the alleged incidents with Knight and Beasley, explained where they were housed in the prison and expressed his concerns about his safety. The interview concluded with Defendants advising Plaintiff to ignore Knight and Beasley because "the situation isn't that serious" and "no one would risk going to level five over this." (Dkt. # 1, Pg. ID 10.) After the interview Plaintiff was taken off "in-cell" status. Defendants Ricumstrict and Thomas completed a protection request form indicating that Plaintiff "stated that it was a misunderstanding and he is ok now. He agreed that he can still be housed in 5 block."

(Dkt. # 1, Pg. ID 24.) Plaintiff disputes making such statements to Defendants Ricumstrict and Thomas.

Plaintiff claims that Defendant Enders was notified on February 22, 2017, that Plaintiff had completed the residential treatment program ("RTP") and should be transferred back to the long-term protection unit at IBC. (Dkt. # 17, Pg. ID 87.) Plaintiff alleges that Defendant Enders failed to notify IBC of this completion, and as a result, Plaintiff's transfer back to his protective custody unit at IBC was delayed. Additionally, according to Plaintiff, Defendant Enders failed to provide protection for Plaintiff from Knight and Beasley while he was in the treatment program at ARF. (Dkt. # 1, Pg. ID 16-17.)

Sometime later, Knight and Beasley threatened Plaintiff for "snitching them out." (Dkt. # 1, Pg. ID 10.) On February 27, 2017, Knight struck Plaintiff "multiple times" in the head. (*Id.*) Plaintiff received medical care while Knight was placed on "non-bound status."[4] (Dkt. # 1, Pg. ID 11.)  Knight was moved to a different cell within the same unit. (*Id.*) Plaintiff remained in his assigned cell. (*Id.*) Plaintiff claims Beasley later told Plaintiff that the attack by Knight was "not the end". (*Id.*)

On March 1, 2017, Plaintiff filed a Step 1 Grievance with ARF against Defendants Ricumstrict and Thomas. In this grievance, Plaintiff alleged Defendants Ricumstrict and Thomas "did nothing to prevent the threat of assault and lied on my protection request." (Dkt. # 17-2, Pg. ID 136.) Defendants claim that this grievance was evaluated by the Step 1 respondent and ultimately rejected. (Dkt. # 22, Pg. ID 210.) Plaintiff filed a Step 2 Grievance claiming that he did not receive a timely response to

---

[4] The documentation submitted by the parties does not define "non-bound status".

his Step 1 Grievance. He also filed a Step 3 Grievance, in which he claims that Defendants Ricumstrict and Thomas "had the responsibility and authority to provide a reasonable investigation to this serious allegation . . . this caused me to get assaulted by Knight." (Dkt. # 17-2, Pg. ID 134.)

On March 4, 2017, Beasley struck Plaintiff. The injuries resulting from the attack required Plaintiff to get "stitches on his face, blurred vision, dizziness, and severe swelling." (Dkt. # 1, Pg. ID 12.) Beasley was placed on "non-bound status" for the assault. (*Id.*) Plaintiff was placed in a different cell within the same unit and placed on "in-cell" status.

On March 7, 2017, Plaintiff was transported from ARF to IBC, where he was placed back in long-term protective custody. Plaintiff was transported in the same van as Beasley. Plaintiff claims that Beasley made derogatory comments during the ride, but Plaintiff does not claim that a physical altercation occurred. (Dkt. # 1, Pg. ID 12.)

On March 9, 2017, Plaintiff filed a Step 1 Grievance with IBC against Defendants Ricumstrict, Thomas, and Enders regarding Beasley's assault on March 4, 2017. In this grievance, Plaintiff alleged that Defendants "failure to protect me from know[n] threats and further assaults I was assaulted again on 3-4-17 by Prisoner Beasley." (Dkt. # 17-2, Pg. ID 129.) In Plaintiff's Step 2 Grievance, he stated that the Step 1 Grievance filed with ARF against Defendants Ricumstrict and Thomas was misunderstood and that Defendants Ricumstrict, Thomas, and Enders "jeopardized [his] safety by keeping [him] housed around the source of threat and [his] assaulter which caused a [second] assault." (Dkt. # 17-2, Pg. ID 127.) Plaintiff alleges that his Step 2 Grievance did not

receive an answer and he appealed it to Step 3. Defendants claim the rejection of Plaintiff's Step 1 Grievance was upheld. (Dkt. # 22, Pg. ID 210; Dkt. # 17-2, Pg. ID 135.)

On April 28, 2017, Plaintiff filed a Step 1 Grievance with IBC against "all prison officials" involved in Plaintiff's transfer from ARF to IBC. (Dkt. # 21, Pg. ID 204.) In this grievance, Plaintiff alleged Beasley was not properly restrained in the transport van—in a manner that would prevent him from assaulting Plaintiff again. Plaintiff argued that "[a]ll officers and officials should have been on alert due to the events and assaults leading up to [the March 4, 2017 assault by Beasley]." (*Id.*) Whether Defendants provided a response to this grievance is unclear.

On July 18, 2017, Plaintiff placed a kite to prison officers to find out whether a SPON had been issued in IBC regarding his complaints about Knight and Beasley. (Dkt. # 1, Pg. ID 36.) The response stated that Plaintiff did not have any SPONs in the system. (*Id.*)

### C. Procedural History

On August 1, 2017, Plaintiff filed this case pursuant to 42 U.S.C. § 1983 against Defendants Ricumstrict, Thomas, and Enders claiming that Defendants' actions amount to "cruel and unusual punishment" in violation of the Eighth Amendment. (Dkt. # 1.) Defendants filed a motion for partial summary judgment asserting that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA. (Dkt. # 17.) In Plaintiff's response he conceded that he had not exhausted his administrative remedies as to one of his claims, and requested leave to file an amended complaint striking that claim. (Dkt. # 21.) Defendants replied contending that Plaintiff still has not exhausted his administrative remedies regarding two of his remaining claims. (Dkt. # 22.)

This court referred the motion to Magistrate Judge David Grand who issued a Report and Recommendation ("R&R") advising the court to grant Defendants' motion for partial summary judgment on Plaintiff's claim that Defendant Enders failed to protect Plaintiff from Knight. Judge Grand further recommended that the court dismiss Plaintiff's claim regarding his transport back to IBC in the same van as Beasley for failure to state a claim pursuant to 42 U.S.C. §1997(e)(c)(1) and 28 U.S.C. §1915(e)(2)(B). (Dkt. # 23.) Plaintiff filed two objections to the R&R (Dkt. # 26) and Defendants responded. (Dkt. # 28.)

## II. STANDARD

### A. Dismissal pursuant to 42 U.S.C. § 1997e(c)(1)

Pursuant to the Prisoner Litigation Reform Act of 1996 ("PLRA"), the court *sua sponte* dismisses a prisoner's *in forma pauperis* complaint "at any time" if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(1); *see also* 28 U.S.C. § 1915(e)(2)(B) (imposing same requirements for complaints filed in *in forma pauperis*).

Federal Rule of Civil Procedure 8 requires a plaintiff to present "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The Rule 8 pleading standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The court must liberally construe complaints filed by *pro se* litigants. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). *Pro se* litigants must nevertheless satisfy the basic pleading requirements that apply in all federal cases, and there are certain limits to the leniency granted to them. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The plaintiff must plead sufficient facts to show that each individual defendant committed a redressable legal wrong. *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008).

### B. Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a reasonable person could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted).

The parties' must support their factual assertions by citation to the record; the court is under no obligation to search for materials in the record uncited by the parties. Fed. R. Civ. P. 56(c).

### C. Review of Report and Recommendation (R&R)

Where a party files timely objections to an R&R, the court is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *Gant v. Genco I, Inc.*, 274 F. App'x 429, 431-32 (6th Cir. 2008). The court then re-examines all evidence relevant to the objected-to portion of the R&R and determines whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *United States v. Walters*, 638 F. 2d 947, 950 (6th Cir. 1981), enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011) (quoting *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991)).

## III. DISCUSSION

Plaintiff has brought claims against Defendants based on their alleged violations of the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

### A. Eighth Amendment Claims pursuant to 42 U.S.C. § 1983

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666 (1962), prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes. To assert an Eighth Amendment claim, a prisoner's injury does not have to be serious, but it has to be more than "de minimus." *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that prisoners receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see also Helling v. McKinney*, 509 U.S. 25, 31-2 (1993). A prison official violates a prisoner's Eighth Amendment rights when he demonstrates deliberate indifference to an unsafe condition of confinement. An officer can be "deliberately indifferent" to a prisoner's safety if he voluntarily allows the prisoner to be in serious risk of harm. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A prison official can be found liable for a violation of the Eighth Amendment for denying a prisoner humane conditions of confinement if the official was both aware of facts from which he could draw an inference that a substantial risk of serious harm existed and was also able to draw the inference. *Farmer*

*v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a prisoner needs to show only that the prison official acted or failed to act despite knowledge of a substantial risk of serious harm. *Id.* at 842.

### B. The Administrative Exhaustion Requirement of the PLRA

While 42 U.S.C. § 1983 allows a person, including a prisoner, to raise constitutional claims against the United States, the PLRA requires a prisoner to pursue administrative remedies available to him within his prison before he is able to raise a constitutional claim pursuant to Section 1983. The PLRA's exhaustion requirement allows prison officials an opportunity to address prisoner issues before being brought into federal court. *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Under the PLRA, a prisoner may not bring a federal action challenging his prison conditions without first exhausting "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 734, 739 (2001). The prison's requirements—not the PLRA—define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). An alleged failure to exhaust administrative remedies is an affirmative defense that must be raised and proven by a defendant. *Jones*, 549 U.S. at 216.

### C. Plaintiff's Claims

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to protect him. To this effect, Plaintiff raises five claims based on various prison officials' conduct, specifically: (1) Defendant Enders' failure to inform IBC of Plaintiff's completion

14

of the RTP at ARF; (2) Defendants Ricumstrict and Thomas' falsehoods on the protection request form after Plaintiff's interview regarding protection from Knight and Beasley; (3) Defendants Ricumstrict, Thomas, and Enders' failure to prevent Knight's assault; (4) Defendants Ricumstrict, Thomas, and Enders' failure to protect Plaintiff after Knight's assault (i.e., to prevent Beasley's assault); and (5) the failure of all prison officials to protect Plaintiff from Beasley during his transport from ARF to IBC.

Recognizing he had not exhausted his administrative remedies with respect to his first claim, Plaintiff proposed an amended complaint striking that claim. (Dkt. # 21, Pg. ID 194.) Judge Grand subsequently recommended that the court grant summary judgment to Defendants on that claim finding summary judgment as opposed to an amended complaint to be the proper course of action procedurally. (Dkt. # 23, Pg. ID 218, n. 5.) Plaintiff filed an "objection" to Judge Grand's order striking his amended complaint (Dkt. # 25) because he believes his amended complaint would do more than strike his first claim, but he does not dispute that he failed to exhaust his administrative remedies for his first claim and does not contest Judge Grand's recommendation on that claim. This court agrees with Judge Grand's analysis and will adopt his recommendation on Plaintiff's first claim.

The parties do not dispute that Plaintiff properly exhausted his second and fourth claims; the parties also agree that Plaintiff properly exhausted his third claim, but with respect to only Defendants Ricumstrict and Thomas. Thus, only two of Plaintiff's claims are the subject of the present motion—Plaintiff's third claim with respect to only Defendant Enders and Plaintiff's fifth claim against all prison officials. Defendants seek summary judgment on the basis that Plaintiff has failed to properly exhaust the

administrative remedies available to him regarding his third and fifth claims. (Dkt. # 17, Pg. ID 96.)

Judge Grand recommends summary judgment be granted to Defendant Enders for Plaintiff's third claim and dismissal of Plaintiff's fifth claim for failure to state a claim pursuant to 42 U.S.C. § 1997(e)(c)(1) and 28 U.S.C. § 1915(e)(2)(B). (*See generally* Dkt. # 23.) Judge Grand concluded that Plaintiff has not exhausted his administrative remedies for his third claim because he did not include Defendant Enders' name on his grievances regarding Knight's assault as required by MDOC policy. Judge Grand further concluded that Plaintiff's fifth claim fails to state a claim because Plaintiff has not shown a physical injury resulting from the transport van incident as is required under the PLRA to recover emotional damages resulting from that incident.

Plaintiff raises two objections to Judge Grand's R&R: (1) Plaintiff argues that he included Defendant Enders' name in later grievances regarding his third claim thus excusing his failure to include Defendant Enders' name on his initial grievances, and (2) Plaintiff argues that he suffered a physical injury so as to support his request for emotional injuries in his fifth claim. The court will review each of Plaintiff's objections.

### 1. Plaintiff was required to list the names of all relevant officers in each of his grievances

In *Jones*, the Supreme Court held that the PLRA does not impose a "name all defendants" requirement. *Jones v. Bock*, 549 U.S. 199, 217 (2007). As the Court explained, "[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. However, the PLRA requires a prisoner to comply with the administrative remedies procedure available at the prison in which she is housed. *See* 42 U.S.C. § 1997e(a); *see also Sullivan v. Kasajaru*, 316 F.

App'x 469, 470 (6th Cir. 2009). Therefore, "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011).

After *Jones*, the MDOC revised its policy to require a prisoner to include the names of all prison officials relevant to his complaints in his grievance as part of the exhaustion process. *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009). Specifically, each Step I Grievance filed in an MDOC prison must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." (Dkt. # 17-3, Pg. ID 152.) Courts in this district have since held that prison officials who are not named in an MDOC Step 1 Grievance are entitled to summary judgment in their favor based on the plaintiff's failure to exhaust the administrative process absent extenuating circumstances.[5] *Bird v. Mansfield*, No. 12238, 2013 WL 4782369, at *3 (W.D. Mich. Sept. 5, 2013).

> Plaintiff's Step I Grievance regarding Knight's assault states:
>
> I requested protection from prisoner Knight #833566 on 2-8-17 and was told by RUM Thomas and Deputy Warden Ricumstrict to ignore the situation and it would go away. On 2-27-17 I was then physically assaulted by prisoner Knight #833566 causing injuries. RUM Thomas and Deputy Warden Ricumstrict did nothing to prevent the threat of assault and lied on

---

[5] None of those circumstances is present here. *See Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (recognizing an exception to the MDOC's name requirement where the MDOC did not enforce that rule); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (contemplating an exception to the MDOC's name requirement where the prison conceals the name of the relevant official from the prisoner such that he is unable to reference the official in his grievance); *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) (Lawson, J.) (contemplating an exception to the MDOC's name requirement where it is obvious from the facts alleged in the plaintiff's grievance that the unnamed prison official was involved in the grieved incident).

my protection request reporting that I said it was a 'misunderstanding,' thus RUM Thomas and Deputy Warden Ricumstrict kept me in a hostile situation that ended up causing me physical harm.

(Dkt. # 17-2, Pg. ID 136.) The prison's Step I response states, "Grievant feels that staff lied on his [protection] request and did not properly protect him . . . the danger of being assaulted could not be verified at the time. Prisoner could not provide any details that would persuade [the prison] to uphold his protection request." (Dkt. # 17-2, Pg. ID 137.)

Plaintiff's Step 2 Grievance states:

Grievance Coordinator Ream stated the Step I response was due on 4-13-17. I have not received a response even though the grievance was filed on 3-1-17. Note: I'm currently at another facility but only given 3 business days to mail this appeal to ARF. Since the mailing process requires more time than that I'm requesting this appeal to be accepted if it's late.

(Dkt. # 17-2, Pg. ID 134.) The prison's Step 2 response states:

"Prisoner has not provided any new information or evidence to support his allegations. Personal opinion and or personal interpretations are not evidence. Your allegations were looked into by an appropriate supervisor. This supervisor was unable to find evidence to support or deny your allegations of a violation of policy as written. The Step I response is upheld."

(Dkt. # 17-2, Pg. ID 135.) Plaintiff's Step 3 Grievance states:

The Step 1 response was not provided in a timely manner explaining lack of further argument in Step II. RUM Thomas and Dep. W. Ricumstrict had the responsibility and authority to provide a reasonable investigation to this serious allegation and to provide reasonable measures to abate the hostile situation in Unit 5. I never signed a protection request waiver clearly proving the denial of protection with no precautions to my safety. This caused me to get assaulted by Knight #833566 on 2-27-17.

(Dkt. # 17-2, Pg. ID 134.) The prison's Step 3 response states: "Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered. The Step III Appeal Is Denied." (Dkt. # 17-2, Pg. ID 133.)

Judge Grand concluded that MDOC Policy Directive 03.02.130 requires Plaintiff to list the name of an officer in his grievances in order to exhaust his administrative remedies as to that officer, and that Plaintiff's failure to include Defendant Enders' name in his March 1st grievance is fatal to his third claim. (Dkt. # 23, Pg. ID 224.)

Plaintiff does not dispute that he did not include Defendant Enders' name on his Step 1 Grievance regarding his third claim, but instead objects to Judge Grand's recommendation and asserts that "Enders was in fact grieved in my Step III appeal of that grievance." (Dkt. # 26, Pg. ID 237.) Plaintiff argues that including a defendant's name in later steps of the grievance process serves the purpose of the PLRA's exhaustion requirement because it still gives the prison official notice to resolve the issue before being brought into court. (*Id.* at 238.)

Contrary to Plaintiff's understanding of the record, his Step 1, Step 2, and Step 3 Grievances regarding Defendants' failure to prevent Knight's assault list the names of only Defendants Ricumstrict and Thomas. (Dkt. # 17-2, Pg. ID 134, 136.) None of the grievances reference Defendant Enders. (*Id.*)

Plaintiff's confusion may stem from the fact that both his March 1st and March 9th Step 1 Grievances concern Knight; however as explained by Judge Grand, these two grievances address separate complaints. In his March 1st grievance Plaintiff complains of Defendants Ricumstrict and Thomas' failure to prevent Knight's assault. In his March 9th grievance, Plaintiff complains that all three Defendants' failed to protect him after Knight's assault, i.e., they failed to prevent Beasley's assault. (Dkt. # 17-2, Pg. ID 129.)

Undisputedly, Plaintiff did not include Defendant Enders' name in his grievances regarding Defendants' failure to prevent Knight's assault. Although Plaintiff included the names of all three Defendants on his March 9th Grievance, this inclusion is immaterial to Plaintiff's third claim, which is based on his March 1st Grievance. The court will overrule Plaintiff's objection. The court concludes in accordance with the R&R that Plaintiff has not exhausted his administrative remedies for his third claim with respect to Defendant Enders due to Plaintiff's failure to comply with MDOC Policy Directive 03.02.130.

The court will grant summary judgment to Defendant Enders with respect to Plaintiff's third claim.

### 2. Plaintiff's has not shown a physical injury

The PLRA states that:

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

42 U.S.C. § 1997e(e). The PLRA excludes Eighth Amendment claims seeking damages for emotional or mental injury without a "showing of [a] physical injury concerning [the] Eighth Amendment claims." *See Garrison v. Walters*, 18 Fed. App'x 329, 331 (6th Cir. 2001) (citing 42 U.S.C. § 1997e(e)). The requisite physical injury must be the result of the conduct that forms the basis for the Eighth Amendment claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008) (citing *Merchant v. Hawk-Sawyer*, 37 Fed. App'x 143, 145-46 (6th Cir. 2002)).

Judge Grand emphasized that Plaintiff admits that no physical altercation took place in the transport van. (Dkt. # 23, Pg. ID 226.) Consequently, the R&R advises the

court to dismiss Plaintiff's claim pursuant to 42 U.S.C. § 1997(e)(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

Plaintiff objects to Judge Grand's recommendation to dismiss his fifth claim regarding the emotional damages he suffered as a result of being transported from ARF to IBC in the same van as Beasley on March 7, 2017. (Dkt. # 17-2, Pg. ID 124.) Plaintiff argues that he has shown a physical injury; namely Beasley's assault on March 4, 2017. (Dkt. # 26, Pg. ID 240.) While Beasley's assault did not occur in conjunction with his emotional injuries during his transfer, Plaintiff argues that Beasley's assault nonetheless provides the basis for his claims for the emotional injuries he suffered in the transport van. He contends that being in the transport van with the same person that assaulted him a few days earlier shows a "continued pattern of emotional trauma." (*Id.*)

Beasley's assault three days earlier does not satisfy the physical injury requirement of the PLRA. *See* 42 U.S.C. § 1997e(e). Plaintiff misreads the statute which does not require a "showing of prior physical injury," but rather requires a "prior showing of a physical injury." Plaintiff's ability to claim emotional damages for his Eighth Amendment claim is limited by his ability to show a physical injury for *that* claim. Without a resultant physical injury from the same conduct, claims for emotional injuries cannot be sustained under the PLRA. *See Powell v. Washington*, 720 Fed. App'x. 222, 229 (6th Cir. 2017) (holding that the plaintiff prisoner could not maintain a claim of damages for psychological injury from his confinement in administrative segregation when he had "not alleged that he sustained a physical injury that resulted from [said] confinement").

The conduct that forms the basis of Plaintiff's Eighth Amendment claims is Defendants' alleged failure to protect Plaintiff from a potential second assault by

Beasley. Plaintiff asserts that due to Defendants' decision to transport Beasley and Plaintiff in the same van, unrestrained, Beasley was given "the opportunity to assault and harass [Plaintiff] further." (Dkt. # 1, Pg. ID 12.) However, Plaintiff has not shown that he suffered a physical injury as a result of Defendants' decision to transport him to IBC in the same van as Beasley. The opportunity for Beasley to assault Plaintiff is insufficient to satisfy the PLRA. *See* 42 U.S.C. § 1997e(e). The absence of a physical injury precludes the mental and emotional damages that Plaintiff seeks in his fifth claim. Plaintiff's objection will be overruled. The court further concludes that because Plaintiff has not satisfied 42 U.S.C. § 1997e(e) his fifth claim fails to state a claim. In accordance with Judge Grand's recommendation, the court will dismiss Plaintiff's fifth claim pursuant to 42 U.S.C. § 1997(e)(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

## IV. CONCLUSION

Plaintiff has not exhausted his administrative remedies within the MDOC prison system as required by the PLRA for his third claim against Defendant Enders. Plaintiff has failed to raise a genuine issue of material fact regarding whether he properly filed grievances against Defendant Enders for his alleged failure to prevent Knight's assault—the basis for his third claim. Moreover, Plaintiff has not alleged that he suffered a physical injury as a result of being transported in a van with Beasley as required by the PLRA. Accordingly,

IT IS ORDERED that Plaintiff's objections (Dkt. # 26) are OVERRULED; the Magistrate Judge's Report and Recommendation (Dkt. # 23) is ADOPTED in its entirety.

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment (Dkt. # 17) is GRANTED as to Plaintiff's third claim against Defendant Enders; and Plaintiff's fifth claim is DISMISSED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  August 30, 2018


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 30, 2018, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

C2Orders/17-12495.ITRICH.AdoptR&RGrantSJ.sg6.aju